**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

ALBERT G.,[1]              )
                          )
          Plaintiff,      )
                          )
    v.                    )          Civil Action No. 3:25-CV-157 (RCY)
                          )
FRANK BISIGNANO,          )
Commissioner of Social Security,    )
                          )
          Defendant.      )
_____)

**MEMORANDUM OPINION**
**(Adopting Report and Recommendation of the Magistrate Judge)**

Plaintiff Albert G. challenges the Social Security Administration Commissioner's ("Commissioner" or "Defendant") final decision to deny his application for Title II disability insurance benefits. On January 30, 2026, Magistrate Judge Summer L. Speight issued a Report and Recommendation ("R&R") on the parties' cross-motions for summary judgment (ECF No. 19). The R&R recommended that the Court (1) deny the Plaintiff's motion for summary judgment; (2) grant the Commissioner's motion for summary judgment; and (3) affirm the final decision of the Commissioner. Plaintiff has objected to the Magistrate Judge's R&R and asks that the Court reject the R&R and remand the matter for further administrative proceedings. For the reasons that follow, the Court will overrule Plaintiff's objections and will adopt the Magistrate Judge's R&R in full.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that federal courts refer to claimants in social security cases by first name and last initial.

## I.    STANDARD OF REVIEW

A district court reviews *de novo* any part of a Magistrate Judge's disposition to which a party has properly objected. Fed. R. Civ. P. 72(b)(3); *Wimmer v. Cook*, 774 F.2d 68, 73 (4th Cir. 1985). As long as the "grounds for objection are clear, district court judges must consider them *de novo*, or else run afoul of both § 636(b)(1) and Article III." *Elijah v. Dunbar*, 66 F.4th 454, 460 (4th Cir. 2023). If an objection is not timely filed or sufficiently specific, it is not considered proper, and a district judge reviews only for clear error. *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005). Importantly, "district court judges are not required to consider new arguments posed in objections to the magistrate's recommendation." *Elijah*, 66 F.4th at 460 n.3 (citing *Samples v. Ballard*, 860 F.3d 266, 275 (4th Cir. 2017)).

In conducting *de novo* review, a court must determine whether the factual findings are supported by substantial evidence and whether the proper legal standard was applied in evaluating the evidence. *Johnson v. Barnhart,* 434 F.3d 650, 653 (4th Cir. 2005). Substantial evidence requires "more than a mere scintilla of evidence but may be somewhat less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). In reviewing for substantial evidence, a court may not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Id.* Because the standard is "somewhat less than a preponderance," it is possible for a decision to be supported by substantial evidence, while substantial evidence also exists to support an alternative finding. *See Dunn v. Colvin*, 607 F. App'x 264, 274 (4th Cir. 2015) ("An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." (quoting *Clarke v. Bowen*, 843 F.2d 271, 272–73 (8th Cir. 1988))). Thus, even if the reviewing court were to personally disagree

with the ALJ's conclusion, it must nevertheless affirm the determination if it is supported by substantial evidence. *Hancock v. Astrue*, 667 F.3d 470, 476 (4th Cir. 2012) (citing *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996)).

Upon concluding its review, a court may "accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

## II. ANALYSIS

Plaintiff's overarching objection to the R&R is that the Magistrate Judge improperly provided post-hoc rationalizations for the ALJ's decision, which was otherwise inadequate with respect to creating the necessary logical bridge between the evidence and her conclusions. Pl.'s Obj. 1–3, ECF No. 20. Plaintiff argues that, when the record and Plaintiff's medical history are properly and fully viewed, substantial evidence does not support the ALJ's decision. *Id.* at 1, 4. Faced with this specific objection, the Court is obligated to engage in *de novo* review of the record to determine whether the Magistrate Judge erred in concluding that ALJ's findings are supported by substantial evidence. *Elijah*, 66 F.4th at 460. Having done so, the Court is not persuaded by Plaintiff's objection. The Court finds the R&R well-reasoned and supported by the record and applicable law, and as such will adopt the R&R in full.

*First*, the Court is not persuaded by Plaintiff's argument that the ALJ did not properly account for Plaintiff's full history with respect to necrotizing fasciitis. Plaintiff asserts that, despite having alleged his disability onset date to be November 5, 2019, the record should include "everything related to Plaintiff's necrotizing fasciitis which directly led to his disabling symptoms." Pl.'s Obj. 2. Having reviewed the record, the Court agrees with the Magistrate Judge that, despite not repeatedly naming Plaintiff's malady, the ALJ sufficiently accounted for

Plaintiff's medical history in developing a picture of Plaintiff's current condition and, in so doing, properly relied on the evidence presented in the collected administrative record. *See* R. at 22, 26; R&R 16. The Court certainly disagrees with Plaintiff's characterization of the R&R as having "dismiss[ed] precipitating events as irrelevant to Plaintiff's current condition." Pl.'s Obj. 2. Rather, the Magistrate Judge simply noted that extensive evidence regarding Plaintiff's hospitalization and surgeries for necrotizing fasciitis was not in the record,[2] yet even despite this, "the ALJ considered Plaintiff's history of necrotizing fasciitis which required multiple debridements and caused neuropathy in the lower left extremity." R&R 16 (citing R. at 26, 569).

*Second*, the Court disagrees with Plaintiff's contention that the ALJ's supportability and consistency analysis was inadequate and the Magistrate Judge erred in finding otherwise. Pl.'s Obj. 2. Plaintiff specifically takes issue with the following: that "[t]he Magistrate Judge does not address the fact that the majority of the [medical] opinions in the record opined a sedentary exertional level despite an unproven potential to lift slightly higher weight;" that the ALJ failed to provide "an explanation of how Plaintiff's leg swelling and potential need to elevate his legs impacted the ALJ's RFC conclusions;" that the ALJ does not "address Plaintiff's need to elevate his leg as part of management of his incurable lymphedema symptoms;" and finally that the foregoing was "particularly harmful" error because the Vocational Expert ("VE") "indicated that extra breaks throughout the day, such as would be needed for elevation of his leg, would be preclusive to competitive employment regardless of light versus sedentary exertional level." Pl.'s Obj. 2–3.

---

[2] Plaintiff concedes as much in his Reply in support of his Motion for Summary Judgment, *see* Reply 4, ECF No. 18, but seems to endeavor to incorporate such records by way of mere reference in his other treatment providers' notes, *see id.* This runs counter to a plaintiff's burden to present a full record for administrative review, which Plaintiff himself references in his briefing. *See* Reply 3 (citing 20 C.F.R. § 404.1512(a) as dictating a plaintiff's evidentiary responsibility to "inform [the agency] about or submit all evidence known to you that relates to whether or not you are blind or disabled . . . .").

The Court acknowledges that, in recounting the medical expert reports in the record, neither the Magistrate Judge nor the ALJ include reference to any recommendations of a sedentary exertion level.  *See* R&R 8–9; Pl.'s Obj. 2 (challenging the ALJ's purported failure to address the issue of consistency between opined exertion levels and "unproven potential to lift slightly higher weight").  Far from being error, however, this was in fact proper, as 20 C.F.R. 404.1520b provides that "[s]tatements about what your residual functional capacity is" are "inherently neither valuable nor persuasive to the issue of whether you are disabled," because that is an issue reserved to the Commissioner, and thus the ALJ "will not provide any analysis about how [they] considered such evidence in [their] determination or decision, even under § 404.1520c.[3]"  Accordingly, the Court rejects the proposition that the ALJ's analysis was deficient with respect to supportability and consistency in this regard.

Plaintiff's next two arguments concern the fact that the ALJ did not address Plaintiff's "need to elevate his leg[s]" to manage swelling in explaining his RFC determination.  Plaintiff cites *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018), in support of this omission constituting error.  In *Woods*, the Fourth Circuit vacated the decision below and remanded the case to the ALJ after finding that the ALJ did not expressly refer to specific evidence in justifying the weight afforded to a prior disability decision.[4]  The Court does not find *Woods* to be on point, here.  Specifically, the ALJ *did* account for Plaintiff's need to manage swelling in crafting an RFC for

---

[3] This section is aptly titled, "How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017," and it includes the necessary consistency and supportability considerations.

[4] *Woods* involved application of the pre-2017 SSA regulations; based on those rules, medical opinions were to be afforded varying degrees of weight based on the provider's relationship with the disability applicant.  *See Rogers v. Kijakazi*, 62 F.4th 872, 877 (4th Cir. 2023) (explaining how *Woods* and other precedent had been superseded by changes to the C.F.R.).  Now, however, under current regulations, provider testimony is not afforded any distinguishing weight and instead is evenly assessed based on the criteria stated in 20 C.F.R. § 404.1520c—most importantly, supportability and consistency.

Plaintiff, finding that "the evidence shows that the claimant's pain and other symptoms . . . affect his abilities to . . . perform postural tasks." R. at 27; *see also id.* at 28 (connecting Plaintiff's affected ability "to perform postural tasks" with "[t]he claimant's pain *and lower left extremity edema*" (emphasis added)). Thus, while the ALJ did not directly address the consistency and supportability of Dr. Hearst's specific opinion that Plaintiff was limited to sitting for eight hours "with elevation of his leg," *id.* at 29, doing so was not necessary because she had elsewhere accounted for Plaintiff's postural limitations, to the extent deemed supported by the record. And the ALJ otherwise explained the limited support and lack of consistency with respect to Dr. Hearst's opinion, generally, and its resulting limited persuasive weight. *See id.* (particularly highlighting Dr. Hearst's totally unsupported opinion that Plaintiff had limitations with respect to his right lower extremity and cognitive function, and how her opinion was otherwise inconsistent with (1) the fact that he has not routinely reported medication side effects and (2) his reported activities of daily living ("ADLs")). As such, the Court does not find itself in the same territory as *Woods*, where the court could only rely on guesswork to determine the bases for the ALJ's decision to accord limited weight to a particular prior decision.

Having found no error with respect to the ALJ's supportability and consistency analysis, the Court does not address Plaintiff's arguments as to the "particularly harmful" nature of the purported error.[5]

---

[5] The Court will, however, note that the rhetoric in Plaintiff's Objection verges into misstating the VE's testimony. *Compare* Pl.'s Obj. 3 ("[T]he VE . . . indicated that extra breaks throughout the day, *such as would be needed for elevation of his leg*, would be *preclusive* to competitive employment regardless of light versus sedentary exertional level." (emphases added)), *with* R. at 60 (VE testimony, in response to a hypothetical regarding an employee needing two extra thirty-minute breaks over the course of a workday, that "above and beyond the normal breaks, anything above and beyond that would be classified as, number one, would be that of an accommodation; number two, is not the norm in the competitive work force; number three, there would be kind of occupations [sic]." The record does not otherwise reflect that Plaintiff would necessarily need a break specifically to elevate his leg during the course of hypothetical employment.).

*Third and finally*, the Court disagrees with Plaintiff's assertion that the ALJ failed to create the necessary logical bridge between the evidence and her assessment of Plaintiff's credibility with respect to his self-reported symptom severity. Pl.'s Obj. 3–4. Plaintiff specifically argues that the Magistrate Judge, in recommending affirmance of the Commission's decision, improperly injected *post hoc* rationalizations into the analysis.

The ALJ found "that [Plaintiff]'s medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." R. at 26. The ALJ went on to recount the evidence as she found it, to include the following: Plaintiff's presentation at various primary care visits and consultative examinations; his self-reported ability to engage in various ADLs at those same appointments; and the "limited treatment" prescribed by Plaintiff's treating physicians. *Id.* at 26–27. It is the latter two buckets of record evidence that Plaintiff takes issue with, arguing that (1) his treatment is only "limited" because it he has generally plateaued and there are no more aggressive treatment options available, and (2) the ALJ failed to account for the limited extent to which Plaintiff engages in the referenced ADLs. Pl.'s Obj. 3–4 (citing *Woods*, 888 F.3d at 695).

While Plaintiff is correct that SSR 16-3p advises that periodic treatment due to a plateauing of symptoms and/or the structuring of activities to manage symptoms and avoid symptom aggravation are factors that can "illustrate possible reasons an individual may not have pursued treatment," *see id.* at 3, that does not detract from the fact that substantial evidence in the record nevertheless supports the ALJ's characterization of Plaintiff's treatment as limited. Specifically, the evidence recounted demonstrates that Plaintiff was managing his symptoms with medication,

7

*see* R. at 26 (tramadol and duloxetine), 27 (gabapentin), he was referred to a lymphedema clinic in the absence of surgical indication to improve his swelling and neuropathy, *id.* at 27, he began using compression stockings and a lymphatic pump thereafter, *id.*, and otherwise frequently went several months between doctors visits in the record period, *see generally id.* at 26–27. Thus, the ALJ did not err in considering the limited nature of Plaintiff's treatment as juxtaposed against Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms.

Similarly with respect to the ADLs reported by Plaintiff, the Court finds no error in the ALJ's analysis. For example, while Plaintiff's brief seems to suggest that the ALJ characterized Plaintiff as actively engaged in high-involvement childcare, *see* Pl.'s Obj. 4, the ALJ rather simply recounted Plaintiff's own testimony that his ten-year-old daughter lives with him every other weekend, R. at 26. Otherwise, the ALJ referenced Plaintiff's own "admitted ability to perform a variety of daily tasks," as those were described in connection with Plaintiff's disability hearing testimony and as recounted in connection with Plaintiff's presentation and self-reports at various medical appointments. *E.g.*, *id.* at 27 (noting that during a consultative examination in August 2022, Plaintiff "indicated being able to bathe, dress, and eat, but require[ed] assistance with cooking and cleaning"). While the ALJ does not elaborate with specificity the extent to which Plaintiff engaged in particular ADLs, she did note various limiting factors. *See id.* at 26 (noting that Plaintiff's daughter only lived with him every other weekend, and that he only goes to the store to collect groceries once a month). Nothing about the ALJ's characterization of Plaintiff's ADLs rises to the levels of mischaracterization described in *Woods*, and the Court is not persuaded by Plaintiff's arguments to that effect. *See Woods*, 888 F.3d at 694–95 (noting the sharp and unacknowledged contrast between the ALJ's summation that Woods could "maintain her personal hygiene, cook, perform light household chores," "shop," "socialize with family members, and

8

attend church services on a regular basis," and Woods's "statements that she cannot button her clothes, has trouble drying herself after bathing, and sometimes needs help holding a hairdryer; that she can prepare simple meals but has trouble cutting, chopping, dicing, and holding silverware or cups; it takes her all day to do laundry; she shops only for necessities, and that process takes longer than normal," etc.). The Court agrees with the Magistrate Judge, that the record reflects that the ALJ properly considered Plaintiff's daily activities in the course of her subjective complaint analysis, and substantial record evidence supports the ALJ's conclusions.

Based on the above *de novo* review, the Court finds no error in the Magistrate Judge's conclusion finding that the ALJ applied correct legal standards and that substantial evidence supports the ALJ's RFC determination. *See* R&R 2; *cf. id.* at 4 (reminding that the standard of review dictates that "a decision by the Commissioner is not subject to reversal merely because substantial evidence [c]ould have supported a different conclusion"). Consequently, the Court likewise finds that the ALJ's decision was supported by substantial evidence, and thus the Commissioner's decision should be affirmed. The R&R will accordingly be adopted in full.

### III. CONCLUSION

Having reviewed the record, the Court will overrule Plaintiff's objection to the Magistrate Judge's R&R, adopt the R&R, grant the Commissioner's motion for summary judgment, deny the Plaintiff's motion for summary judgment, and affirm the final decision of the Commissioner.

An appropriate Order will accompany this Memorandum Opinion.

/s/

Roderick C. Young
United States District Judge

Date: March 23, 2026
Richmond, Virginia

9